1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ANN MORENO,<br><br>          Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:22-cv-00377-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 20). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 12).

Plaintiff presents the following issues:

1.  Ms. Moreno did not intelligently or knowingly waive her right to representation and was prejudiced as a result.

2.  The ALJ's finding of depression as a "non-severe" impairment at step Two is not supported by substantial evidence and is harmfully erroneous.

(ECF No. 20, p. 2).

1

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

I.    **ANALYSIS**

    A.    **Waiver of Counsel and Duty to Develop the Record**

Plaintiff's first issue argues that the (1) ALJ failed to ensure that she intelligently and knowingly waived her right to counsel during her administrative hearing and (2) the ALJ failed to develop the record regarding the effects of her depression.

        1.    **Waiver of counsel**

Plaintiff argues that, because the ALJ did not properly notify her of right to counsel, she could not have "either 'knowingly' or 'intelligently' waiver her right to representation." (ECF No. 20, p. 6). Specifically, she states that "[a] review of the hearing transcript does not reveal that there was any discussion by the ALJ regarding her awareness of her right to an attorney; that legal services were based on contingency; and/or that the ALJ provided her with a list of resources for legal services per the requirements of [the Commissioner's Hearings, Appeals and Litigation Law Manual] HALLEX [I]-2-6-52." (*Id.*).

HALLEX I-2-6-52 B. provides that, "[i]f a claimant is unrepresented, an ALJ will advise the claimant of the right to representation following the procedures in . . . (HALLEX) manual I-2-1-80 B.1." HALLEX I-2-6-52 B. (S.S.A.), 1993 WL 643033. In turn, HALLEX I-2-1-80 B.1. states that, in certain circumstances, an ALJ must advise an unrepresented claimant, among other things, of the "right to obtain representation," of the "availability of both free legal services and contingency representation," and of "access to organizations that assist individuals in obtaining representation." HALLEX I-2-1-80 B.1. (S.S.A.), 2018 WL 6528001.

However, in addressing HALLEX I-2-6-52, the Ninth Circuit has concluded that "HALLEX . . . does not carry the force of law and [is] not binding upon the agency" and therefore a court need "not review allegations of non-compliance with [its] provisions. *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (internal citations and quotation marks omitted). Moreover, the Ninth Circuit has noted that, while other Circuit courts "have imposed disclosure requirements on the Commissioner that go beyond those currently

1   required by 42 U.S.C. § 406(c)," in the Ninth Circuit, "no disclosure is required, other than the

2   disclosure required by § 406(c)." *Id.* at 933-34.

3        Under 42 U.S.C. § 406(c), the Commissioner of Social Security is required to "notify each

4   claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting

5   their cases before the Commissioner of Social Security," with this notification also advising "the

6   claimant of the availability to qualifying claimants of legal services organizations which provide

7   legal services free of charge." Here, the Agency advised Plaintiff in writing of her right to an

8   attorney and of the availability of free legal services on multiple occasions. (A.R. 75, 81, 85, 88-

9   93, 101, 105-106). Most notably, the notice of hearing contained a document explaining that she

10  could have an attorney represent her, that the attorney would not be able to charge more than the

11  Agency approved, and that some organizations provide free legal services, with the Agency

12  having a list of organizations that could help find a representative. (A.R. 105-06, *see* A.R. 90-93 –

13  list of organizations). Plaintiff does not claim to have not received these notices and, at least for

14  the hearing notice, she signed an acknowledgement that she had received it. (A.R. 119).

15       Moreover, contrary to Plaintiff's assertion that "[a] review of the hearing transcript does

16  not reveal that there was any discussion by the ALJ regarding her awareness of her right to an

17  attorney," the transcript contains the following statement by the ALJ: "Ma'am, last time I asked

18  you if you wanted to get a representative and I talked about getting an attorney or non-attorney to

19  help you. You turned that down. Is that still what you want to do? Do you want to go ahead and

20  have a hearing today?" (A.R. 37). Plaintiff responded, "Yes, let's proceed. Yeah." (A.R. 37). And

21  by all indications, this is the second time that the ALJ advised Plaintiff of her right to counsel, as

22  an initial recording of the hearing had to be restarted due to a failed Internet connection. (A.R. 37

23  – "We lost connection on the internet at the hearing we had before so we're going to start from

24  the very beginning.").

25       Because the record demonstrates that the Agency advised Plaintiff of her right to counsel

26  in writing, and the ALJ further advised her at the hearing, the Court concludes that the

27  requirements of § 406(c) were met. *Roberts*, 644 F.3d at 934 ("Because the § 406(c) disclosure

28  requirements were met in this case, there was no agency error.").

### 2. Duty to Develop the Record

Plaintiff argues that she was unable to effectively advocate for herself during the hearing and the ALJ had a duty to further develop the record regarding the effects of her depression. (ECF No. 20, pp. 5-10).

An ALJ has a duty to develop the record for represented and unrepresented claimants, with the duty being "heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). However, because it is the claimant's responsibility to prove that she is disabled, the claimant must offer some evidence to trigger the duty. *Id.* ("Mayes did not provide the ALJ with any medical evidence indicating that she had herniated discs until after the ALJ Hearing. The ALJ had no duty to develop the record by diagnosing Mayes' herniated discs.").

Plaintiff first argues as follows:

> The ALJ significantly mischaracterizes the record at step Two, by stating that "the undersigned asked the claimant if she was seeing anyone for depression and she responded 'no.'" (AR 29). This is not an accurate account of Ms. Moreno's testimony. The fact is that Ms. Moreno made numerous, unsuccessful attempts to testify regarding the effects of her depression on her ability to sustain work activity; however, this testimony was never developed by the ALJ. She was ultimately unable to advocate effectively for herself as a competent attorney would have done and was prejudiced as a result. In fact, a review of the hearing testimony reveals that Ms. Moreno actually testified **that she feels her depression affects her ability to work; that she has not been able to see a psychiatrist due to the COVID pandemic,** *not that she was refusing to see a psychiatrist or had not planned to do so.* (AR 43).

(ECF No. 20, pp. 7-8).

The Court does not believe that the ALJ mischaracterized the Plaintiff's hearing testimony so as to leave the record inadequate or ambiguous, thus triggering the ALJ's duty to further develop the record. At the hearing, the ALJ asked Plaintiff if she was "seeing anybody for depression." (A.R. 43). Plaintiff responded, "I haven't. I haven't been able to go out anywhere with the COVID and yeah, no transportation on top of that. I've been in lockdown whether we

1   have a COVID or not." In the opinion, the ALJ recounted this exchange as follows: "The

2   undersigned asked the claimant if she was seeing anyone for depression and she responded 'no.'"

3   (A.R. 29). This is not a mischaracterization of Plaintiff's testimony. Contrary to Plaintiff's

4   suggestion, the ALJ did not indicate that Plaintiff's failure to obtain treatment was because "she

5   was refusing to see a psychiatrist or had not planned to do so." (ECF No. 20, p. 8).

6          Moreover, in connection with Step Two, the ALJ acknowledged Plaintiff's subjective

7   complaints, including that she did not do much because she was really depressed.[1] (A.R. 23,

8   citing A.R. 195). The ALJ also addressed records from Plaintiff's primary care physician, Dr.

9   Edmonds, and a consultative examiner, Dr. Portnoff, that discussed Plaintiff's depression. (A.R.

10  23, citing A.R. 237 262-263). Despite asserting that she was not able to effectively advocate for

11  herself at the hearing, Plaintiff, now with the benefit of counsel, fails to point to any relevant

12  evidence that the ALJ did not consider, any relevant evidence that the ALJ would have uncovered

13  had the ALJ sought to further develop the record, or what effect such evidence would have had on

14  the disability determination.

15         Plaintiff next argues that "the ALJ afforded Ms. Moreno no opportunity to question the

16  VE and there was no indication that Ms. Moreno understood the implications of VE questioning."

17  (ECF No. 20, p. 8). After the ALJ finished questioning the VE, he asked, "Ms. Moreno, is there

18  anything we have missed today or we have not talked about you think is important in your

19  case?" (AR 46). Plaintiff responded by summarizing her symptoms that she believed rendered her

20  disabled. (AR 46).

21         In this exchange, the ALJ did not expressly advise Plaintiff that she had the opportunity to

22  question the VE. However, Plaintiff offers no authority to show that this is required. Under 20

23  C.F.R. § 416.1416(b)(4), a claimant has a procedural right at a hearing to "question any

24  witnesses." As another court has noted in addressing this issue, it is not clear that this regulation

25  "require[s] an oral advisement of the right to question witnesses." *Citizen v. Berryhill*, No. EDCV

26  17-1505 AGR, 2018 WL 2121825, at *3 (C.D. Cal. May 8, 2018), *aff'd sub nom. Citizen v. Saul*,

27

28  _____
    [1] Plaintiff argues in her next issue that the Step Two finding was deficient. The Court addresses this
    argument below.

5

1   830 F. App'x 224 (9th Cir. 2020). And Plaintiff was advised in writing before the hearing that

2   "[a] vocational expert" would appear and that Plaintiff would be able to "question witnesses."

3   (A.R. 103, 104); *see Citizen*, 2018 WL 2121825, at *2 (noting that, although the plaintiff was

4   unrepresented at the administrative hearing and was not explicitly advised orally of the right to

5   question the VE, she was advised in writing that she could do so).

6       Moreover, "Plaintiff has not shown that if she had been orally offered an opportunity to

7   question the vocational expert, she would have asked a particular question that would have altered

8   the outcome of the case." *Citizen*, 2018 WL 2121825, at *3. Likewise, she has not shown that,

9   had the ALJ further questioned the VE on her behalf, she would have been found disabled.[2]

10  Accordingly, the Court finds that the ALJ's failure to explicitly advise Plaintiff orally at the

11  hearing of her right to question the VE did not trigger a duty to further develop the record.

12      **B.      Step Two Finding and Dr. Portnoff's Opinion**

13      Plaintiff's second issue argues that the (1) the ALJ's Step Two finding is not supported by

14  substantial evidence and (2) the ALJ erred in discounting Dr. Portnoff's opinion. (ECF No. 20,

15  pp. 10-16).

16      **1.     Step Two finding**

17      Plaintiff argues that the ALJ's Step Two finding that her depression was not severe is not

18  supported by substantial evidence because the ALJ "cherry picked" the relevant medical records

19  in evaluating Plaintiff's depression. (ECF No. 20, p. 11). Defendant argues, that "[a]s a threshold

20  matter, because the ALJ continued the sequential analysis beyond step two, and considered all of

21  Plaintiff's impairments in evaluating her claim of disability, including those that were not severe,

22  any error was, at most, harmless." (ECF No. 21, p. 7). The Court agrees.

23      As Plaintiff acknowledges, the ALJ must properly evaluate the record so that the RFC

24  incorporates the appropriate limitations. (ECF No. 20, p. 16 – arguing that, had the ALJ properly

25  _____

26  [2] The Court recognizes that Plaintiff argues in connection with her next issue that, if the ALJ had properly
    evaluated Dr. Portnoff's opinion, the ALJ (or a competent attorney representing Plaintiff) would have
27  asked the VE about limitations that Dr. Portnoff offered, which could have led to a finding in her favor.
    (ECF No. 20, p. 8). However, as explained below, the ALJ properly discounted the limitations assessed in
28  Dr. Portnoff's opinion. Thus, Plaintiff is unable to demonstrate that the outcome would have changed.

account for all of Plaintiff's limitations in the RFC, she would have been found to be disabled).

And in assessing the RFC, an ALJ considers both severe and non-severe impairments. 20 C.F.R.

§ 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we

are aware, including your medically determinable impairments that are not 'severe,' as explained

in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity."). As

the Ninth Circuit noted on this issue:

> Step two is merely a threshold determination meant to screen out weak claims.
> *Bowen v. Yuckert*, 482 U.S. 137, 146–47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).
> It is not meant to identify the impairments that should be taken into account when
> determining the RFC. In fact, "[i]n assessing RFC, the adjudicator must consider
> limitations and restrictions imposed by all of an individual's impairments, even
> those that are not 'severe.'" Titles II & XVI: Assessing Residual Functional
> Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL
> 374184, at *5 (S.S.A. July 2, 1996). The RFC therefore should be exactly the same
> regardless of whether certain impairments are considered "severe" or not.

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

Thus, even if the ALJ failed to properly find some of Plaintiff's impairments severe at

Step Two, that does not render the RFC unsupported by substantial evidence if the ALJ considers

the limitations resulting from the impairment in formulating the RFC. *See Herrera v. Comm'r of

Soc. Sec.*, No. 1:20-CV-01026-SAB, 2022 WL 1165830, at *6 (E.D. Cal. Apr. 20, 2022), *report

and recommendation adopted*, 2022 WL 3969544 (E.D. Cal. Aug. 31, 2022) ("Even if an ALJ

errs by failing to include an impairment as severe at step two, when an ALJ nonetheless considers

limitations resulting from the impairment in formulating the RFC, any error in not considering the

impairment to be severe is harmless.").

Here, although the ALJ found that Plaintiff's depression was not severe at Step Two, the

ALJ found that Plaintiff had some severe impairments at Step Two—diabetes mellitus, obesity,

dysfunction of major joints, and peripheral neuropathy—and proceeded to examine the remaining

Steps of the disability determination, including considering whether to include limitations

resulting from Plaintiff's depression symptoms.[3] *See Buck*, 869 F.3d at 1049 ("Moreover, step

---

[3] Plaintiff mainly argues that the ALJ failed to include limitations from her depression that Dr. Portnoff
offered in his opinion. As discussed below, the Court concludes that the ALJ properly discounted Dr.
Portnoff's opinion.

two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced.
Any alleged error is therefore harmless and cannot be the basis for a remand."); *Emsley v. Kijakazi*, No. 22-35053, 2022 WL 17039000, at *1 (9th Cir. Nov. 17, 2022) ("Emsley argues that the ALJ erred by failing to credit his 'rheumatoid arthritis' and 'degenerative disc disease/sciatica' as severe impairments at Step Two. Any error at Step Two is harmless because, those disputed impairments aside, the ALJ found other impairments to be severe and proceeded to Step Three.").

### 2.  Dr. Portnoff's Opinion

Besides arguing that the ALJ erred by not finding her depression to be a severe impairment, Plaintiff challenges the ALJ's RFC assessment:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift or carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for 6 hours in an 8-hour workday. She can sit for 6 hours in an 8-hour workday. She can push or pull in the limits for lifting and carrying. She can frequently handle with the left hand. She is right hand dominant. She can occasionally climb ramps and stairs. She cannot climb ladders, ropes or scaffolds. She can occasionally stoop, kneel crouch and crawl.

(A.R. 25).

Specifically, Plaintiff argues as follows:

> Had the ALJ accounted for Ms. Moreno's limitations, notably those provided by Dr. Portnoff, which included a mild to moderate impairment in her ability to interact with coworkers and the public; a moderate impairment in her ability to complete a normal workday or workweek without interruptions from a psychiatric condition, and/or a moderate impairment in her ability to deal with the stress encountered in a competitive work environment (AR 240-241), she would not have the MRFC to return to her PRW which was semi-skilled work at a level of SVP 4.

(ECF No. 20, p. 16). And Plaintiff argues that the ALJ's reasons to discount Dr. Portnoff's opinion were not supported by substantial evidence. (*Id.* at 14).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In

1  determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

2  including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,

3  that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*

4  *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

5        In reviewing findings of fact with respect to RFC assessments, this Court determines

6  whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial

7  evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971),

8  but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir.

9  1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a

10  conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

11        As for the ALJ's assessment of Dr. Portnoff's opinion in formulating the RFC, because

12  Plaintiff applied for benefits in March 2019, certain regulations concerning how ALJs must

13  evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R.

14  §§ 404.1520c, 416.920c. (AR 118). These regulations set "supportability" and "consistency" as

15  "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R.

16  §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician

17  hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a

18  medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"

19  and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-

20  (b); 416.920c(a)-(b).

21        As for the case authority preceding the new regulations that required an ALJ to provide

22  clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the

23  Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

24        The revised social security regulations are clearly irreconcilable with our caselaw
   according special deference to the opinions of treating and examining physicians

25  on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a)
   ("We will not defer or give any specific evidentiary weight, including controlling

26  weight, to any medical opinion(s) . . ., including those from your medical

27  sources."). Our requirement that ALJs provide "specific and legitimate reasons"
   for rejecting a treating or examining doctor's opinion, which stems from the

28

special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With these standards in mind, the Court now considers the ALJ's reasons to deem Dr. Portnoff's opinion "not persuasive":

[T]he opinion by the psychologist in the June 2019 CE report as to the claimant having some moderate limitations is not persuasive (Ex. 2F/5-6). While an examining relationship with the claimant exists, it is a single examination (20 CFR 416.920c(c)). Moreover, there is no support for moderate limitations given the psychologist's own objective (not subjective) findings, the remaining unremarkable primary care treatment records, including the claimant's decision to stop taking her psychotropic medication, and the lack of any significant mental health treatment. The undersigned asked the claimant if she was seeing anyone for depression and she responded "no." Moreover, such limitations are not consistent with the reported level of activities of daily living discussed above.

(A.R. 29).

Plaintiff argues that the fact that Dr. Portnoff only examined Plaintiff once is not a reasonable basis to discount the opinion. (ECF No. 20, p. 14). However, the Court concludes that it is. As the Ninth Circuit has noted, while examining opinions receive no special deference, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or

1   ordered from specialists, and whether the medical source has examined the claimant or merely

2   reviewed the claimant's records." *Woods*, 32 F.4th at 792. Here, the fact that Dr. Portnoff only

3   examined Plaintiff once, especially when considered in conjunction with evidence that was

4   inconsistent with Dr. Portnoff's opinion as discussed below, was a reasonable basis to discount

5   the opinion. Likewise, the fact that Dr. Portnoff's own objective findings did not support

6   moderate limitations was a proper ground to discount the opinion. Importantly, elsewhere in the

7   opinion, the ALJ observed that Dr. Portnoff "note[d] adequate grooming/dressed; fair eye contact;

8   adequate concentration, persistence, and pace; alert and orientated; intact immediate recall;

9   coherent thought process; appropriate thought content without suicidal ideation; and adequate

10  insight." (A.R. 23, citing A.R. 239).

11          Moreover, the ALJ was correct to discount Dr. Portnoff's opinion as inconsistent with

12  other evidence. Notably, Plaintiff's primary care treatment records, which offered the only other

13  objective evidence regarding her depression symptoms, show "unremarkable" examination

14  findings, that Plaintiff "had stopped taking Prozac for depression," and that Plaintiff's

15  "depression screenings repeatedly note a score of zero or no concerns." (A.R. 23, citing A.R. 262

16  (normal examination findings), A.R. 307 (noting that Plaintiff "stopped her [P]rozac a week ago

17  for her depression"); A.R. 303 (depression screening score of 0 after Plaintiff responded, "[n]ot at

18  all," to whether she had "[l]ittle interest or pleasure in doing things" or was "[f]eeling down,

19  depressed, or hopeless")). Additionally, Plaintiff's participation in the following activities was

20  another basis to deem Dr. Portnoff's opinion unpersuasive:

21          Furthermore, the claimant's reported activities of daily living support minimal if
            any mental limitations. At the psychological CE, the claimant indicated she has
22          adequate motivation for personal car and can travel alone manage money, and
            prepare food for herself (Ex. 2F). In her function report, she indicated she does not
23          need reminders going places and is able to follow written and spoken instructions
            well. She engages in a number of multistep mental activities including preparing
24          meals, doing household chores, tending her pants, caring for her dog, personal
            care, shopping in stores, and money management. She understands how to handle
25          all aspects of managing money, including paying bills, counting change, and using
            a checkbook or money orders. She is able to drive, which would require memory
26          and the ability to focus. Providing care for her dog indicates she can initiate and
            perform a task she understands and knows how to do. She goes outside every day,
27

28

> spends time with others talking on the phone, shops in stores, and gets along with authority figures. She has no problems with doing her personal care and does not need special reminders to take care of personal needs and grooming, which indicates she is able to maintain personal hygiene and attire appropriate to a work setting. She is also able to go out alone, which reflects an ability to make plans independently of others (Ex. 4E).

(A.R. 23).

Moreover, it is worth noting that Dr. Portnoff's opinion was just one of the multiple medical opinions that the ALJ reviewed for purposes of determining whether Plaintiff was disabled. Notably, the ALJ found "generally persuasive" the findings of psychological consultants who "found that the claimant's medically determinable mental impairment is nonsevere." (A.R. 28, citing A.R. 55, 66). Lastly, while Plaintiff argues that the record could support a different conclusion as to the evidence, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's RFC assessment was supported by substantial evidence and the decision to discount Dr. Portnoff's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

## II.     CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    __February 9, 2023__                    /s/ _Erica P. Grosjean_

                                                 UNITED STATES MAGISTRATE JUDGE